1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Kevin K. Green (CA No. 180919)
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
Tel: (619) 929-3340
Fax: (206) 623-0594
Email: keving@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER SNODGRASS, individually and on behalf of others similarly situated,<br><br>                              Plaintiffs,<br><br>    v.<br><br>SHARP HEALTHCARE, and SHARP GROSSMONT HOSPITAL,<br><br>                              Defendants. | No. **'19 CV 0702 L    LL**<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1
2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    JURISDICTION AND VENUE ........................................................... 3

III.   THE PARTIES .................................................................................... 3

IV.   FACTS ................................................................................................ 4

      A.    The standard of care for the treatment of women's health. .................... 4

      B.    Defendants abused the trust of Plaintiffs and the Class and violated the standard of care. ...................................................... 5

      C.    The recordings were not filmed for the medical care of Sharp's patients. ................................................................................ 6

      D.    The recordings were revealed to the California Medical Board, but not to patients. ....................................................................... 7

      E.    Sharp failed to secure the recordings to protect patient privacy after filming was complete. ................................................. 7

      F.    Sharp publicly disclosed its gross invasion of privacy *for the first time* on or about April 5, 2019. ................................................ 8

      G.    The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment. ............................ 8

V.    CLASS ALLEGATIONS ................................................................. 10

VI.   CAUSES OF ACTION ..................................................................... 12

COUNT I INVASION OF PRIVACY .......................................................... 12

COUNT II INVASION OF PRIVACY – CAL. CONST., ART. 1, § 1 .................... 13

COUNT III  VIOLATION OF CALIFORNIA PENAL CODE §§ 632 AND 637.2 ................................................................................................. 14

COUNT IV  GROSS NEGLIGENCE ........................................................... 15

COUNT V NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE ........... 16

COUNT VI INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .......... 17

COUNT VII NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............. 17

PRAYER FOR RELIEF .............................................................................. 18

010820-11/1115898 V2

Plaintiff, individually and on behalf of all women who underwent a surgery in the Women's Health Center between July 17, 2012 and June 30, 2013 at Sharp Grossmont Hospital, allege as follows:

## I. INTRODUCTION

1. A fundamental tenet of the Hippocratic Oath is the physician's promise to "respect the privacy of my patients, for their problems are not disclosed to me that the world may know."[1] To that end, international medical organizations universally agree that: "A physician shall respect a patient's right to confidentiality."[2]

2. This fundamental tenet extends to the hospital where the physician treats her patients, and only permits the sharing of medical information "when medically necessary" and "with colleagues who are involved in the care of the same patient. This communication should respect patient confidentiality and be confined to necessary information."[3]

3. Trust is an essential part of the relationship between physician and patient. "Without trust, how could a physician expect patients to reveal the full extent of their medically relevant history, expose themselves to the physical exam, or act on recommendations for tests or treatments?"[4] And that trust is particularly crucial when

---

[1] Peter Tyson, "The Hippocratic Oath Today," (March 26, 2001) available at https://www.pbs.org/wgbh/nova/article/hippocratic-oath-today/ (last accessed April 10, 2019).

[2] WMA International Code of Medical Ethics, World Medical Association, available at https://www.wma.net/policies-post/wma-international-code-of-medical-ethics/ (last accessed April 10, 2019).

[3] WMA International Code of Medical Ethics, World Medical Association, available at https://www.wma.net/policies-post/wma-international-code-of-medical-ethics/ (last accessed April 10, 2019).

[4] Susan Dorr Goold, MD, MHSA, MA, *Trust, Distrust and Trustworthiness: Lessons from the Field*, 17 J. GEN. INTERNAL MED. 79, 79–81 (2002) (citations omitted).

a patient is anesthetized, according to a former president of the American Society of Anesthesiologists:

> "Whether the patient is aware or not, every patient deserves to be treated with dignity and respect — as if you were my mother, my father, my sister, my brother. **** The trust a patient has in their physician to have their best interests at heart must not be compromised."[5]

4.      Defendants grossly breached this trust and their patients' right to privacy by installing hidden cameras in all three operating rooms of the Women's Health Center at Sharp Grossmont Hospital. Triggered by motion, these cameras recorded female patients before, during, and after surgical procedures, capturing videos which "depict patients in their most vulnerable state, under anesthesia, exposed and undergoing medical procedures."

5.      More than 1,800 women, who were "unconscious, undressed on operating room tables, undergoing medical procedures" were captured in more than 6,966 video clips.

6.      Defendants did not obtain Plaintiff's or Class members' consent to record their Caesarean births, birth complications, dilatation and curettage to resolve miscarriages, hysterectomies, sterilizations, or other medical procedures.

7.      In a further breach of trust and duty, after the recordings were completed, Sharp stored the files on computers accessible by multiple users, some without password protection. Sharp also allegedly destroyed some recordings, but has not confirmed when or how it deleted the files, whether anyone took the files, or whether the files are nonetheless recoverable.

---

[5] "Anonymous Essay Recounts Shocking Treatment Of Anesthetized Patients," (Aug. 18, 2015), available at https://www.huffpost.com/entry/doctors-patients-anesthetized_n_55d22f8ce4b07addcb43a715.

010820-11/1115898 V2

8.      Plaintiff and the Class have suffered a gross invasion of privacy, which has caused severe emotional distress, pain and suffering, for which Defendants should be held responsible.

## II.    JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are thousands of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and Defendants are citizens of a state different from that of one or more members of the Class.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

## III.   THE PARTIES

11.     Plaintiff Amber Snodgrass is a resident of San Diego, California and a citizen of the United States. Snodgrass gave birth by caesarean section on December 24, 2012 in an operating room at the Women's Health Center at Sharp Grossmont Hospital. Based on the statements of Defendants, Plaintiff alleges, in good faith, that she was secretly recorded by one of the hidden cameras in the operating room. Plaintiff did not consent and would not have consented to being recorded during this procedure, has suffered severe emotional distress upon learning of this gross invasion of privacy, and has been damaged as a result of Defendants' actions.

12.     Defendant Sharp HealthCare is a corporation organized under the laws of California and maintains its principal place of business at 8695 Spectrum Center Boulevard, San Diego, CA 92123.

010820-11/1115898 V2

13.     Defendant Sharp Grossmont Hospital is an affiliate of Sharp HealthCare that maintains its principal place of business at 5555 Grossmont Center Drive, La Mesa, CA 91942.

## IV.   FACTS

**A.     The standard of care for the treatment of women's health.**

14.     The standard of care is the level at which the average, prudent provider in a given field of medicine—here, surgery and anesthesiology—would practice. It is how similarly qualified practitioners would have managed the patient's care under the same or similar circumstances.

15.     Surgeons and anesthesiologists concur that "filming sick people without asking threatens the very dignity of their personhood."[6]

16.     According to the director of the Office of Civil Rights for the Department of Health and Human Services: "Patients in hospitals expect to encounter doctors and nurses when getting treatment, not film crews recording them at their most private and vulnerable moments."[7]

17.     This is not a new position. In fact, in 2001, the Society for Academic Emergency Medicine (SAEM) Ethics Committee concluded that "filming patients without any tangible patient-centered benefit clearly violates both the letter and the

---

[6] Gregory Luke Larkin, MD, MSPH, MS, Academic Emergency Medicine (March 2002), Vo. 9, No. 3, p. 261 (citing Martin E, Martin PML. The reactions of patients to a video camera in the consulting room. J R Coll Gen Pract. 1984; 34:607–10; Servant JB, Matheson JAB. Video recording in general practice; the patients do mind. J R Coll Gen Pract. 1986; 36: 555–6) available at https://onlinelibrary.wiley.com/doi/pdf/10.1197/aemj.9.3.261 (last accessed April 10, 2019).

[7] Press Release, Unauthorized Disclosure of Patients' Protected Health Information During ABC Television Filming Results in Multiple HIPAA Settlements Totaling $999,000, available at https://www.hhs.gov/about/news/2018/09/20/unauthorized-disclosure-patients-protected-health-information-during-abc-filming.html (last accessed April 10, 2019).

- 4 -

spirit" of the Code of Conduct for SAEM and the Code of Ethics for the American College of Emergency Physicians.[8]

18.    Thus, the American College of Emergency Physicians has proclaimed that filming "cannot benefit a patient medically and may compromise both their privacy and confidentiality, [and thus] filming should not commence unless and until a patient with full unencumbered decision making capacity can explicitly consent … ."[9]

19.    Absent consent, the filming of unconscious patients is a fundamental invasion of privacy.

**B.    Defendants abused the trust of Plaintiffs and the Class and violated the standard of care.**

20.    On or about July 17, 2012, Sharp installed and activated hidden cameras in each of the three operating rooms of its Women's Health Center at Sharp Grossmont Hospital. The cameras were embedded in computer monitors in the operating rooms and directed at areas where patients receive care.

21.    The cameras were programmed to start recording as soon as anyone moved in the room, and continue recording until no motion was detected for a set period of time. The cameras operated 24 hours a day, seven days a week until June 30, 2013.

22.    Sharp secretly recorded approximately 1,800 patients undergoing surgical procedures, including cesarean section births, hysterectomies, dilation and curettage

---

[8] Benjamin Lerman, MD, Academic Emergency Medicine (March 2002), Vo. 9, No. 3, p. 262 (citing Marco CA, Larkin GL, for the SAEM Ethics Committee. Filming of patients in academic emergency departments. SAEM Newslett. May-June 2001; XIII(3)), available at https://onlinelibrary.wiley.com/doi/pdf/10.1197/aemj.9.3.261 (last accessed April 10, 2019).

[9] American College of Emergency Physicians, Commercial Filming of Patients in the Emergency Department (Rev. June 2015), available at https://www.acep.org/patient-care/policy-statements/commercial-filming-of-patients-in-the-emergency-department/ (last accessed April 10, 2019).

010820-11/1115898 V2

(D&C), tubal ligations, pelvic floor repairs, laparoscopies, and surgeries to resolve ectopic pregnancies.

23.     Sharp has records that identify the date, medical record number, and surgical procedures performed in each operating room while the hidden cameras were operating. Yet, Sharp never disclosed to any patients (or even its employees) that they were being recorded secretly during their surgical procedures.

**C.     The recordings were not filmed for the medical care of Sharp's patients.**

24.     Sharp claims it installed the cameras to catch a suspected doctor stealing drugs from the operating rooms, but Sharp admitted that it knew the film would not be enough to confront the suspected doctor.

25.     Shortly after installing the cameras, Sharp's then-Director of Security, Raymond Albright, told Sharp Grossmont's then-Chief Executive Officer Michele Tarbet that the video evidence was not sufficient to confront the suspected doctor. However, Tarbet instructed Albright to continue taking the videos.

26.     Sharp even kept the cameras running for almost a year, including several months after it concluded its investigation of the suspected doctor without any medical justification.

27.     Sharp's Senior Vice President and General Counsel then instructed Howard LaBore, Sharp's Investigator, to review the recordings after Sharp confronted the suspected doctor. Over three weeks, LaBore reviewed each of the videos, working approximately 40 hours per week. LaBore has stated that he could see patients' faces, as well as from the head of a patient down to her feet.

28.     Sharp's General Counsel has also described the content of the videos, stating: "all capture scenes within the three operating rooms, which are not open to the public. There are images contained within the multitude of images of women undergoing operations of a very personal, private nature, unconscious and in states of exposure depending on the operation being performed."

**D.    The recordings were revealed to the California Medical Board, but not to patients.**

29.    Sharp never disclosed to any patients (or even its employees) that they were being recorded secretly during their surgical procedures.

30.    The existence of the recordings only became known to a limited number of people when the Medical Board of California began an investigation of the suspected doctor in 2015.

31.    The suspected doctor subpoenaed Sharp, demanding production of all the recordings in that proceeding so that he could search for exculpatory evidence, i.e., recordings showing other doctors taking drugs from the operating room carts. Sharp moved to quash that subpoena.

32.    In its motion to quash, Sharp acknowledged that disclosure of the secret recordings "runs afoul of privacy interests of a multitude of persons, protected by among other things Article 1, Section 1 of the California Constitution, the California Medical Information Act (Civil Code § 56 *et seq*., and specifically § 56.10), California Evidence Code section 994, the Fourth Amendment of the U.S. Constitution and/or the Health Insurance Portability and Accountability Act (HIPAA)."

33.    Sharp also acknowledged in its motion to quash that "[p]atients have an objectively reasonable expectation that video reflecting them in their most vulnerable state, unconscious on an operating room table, will not be disclosed."

**E.    Sharp failed to secure the recordings to protect patient privacy after filming was complete.**

34.    Sharp has disclosed conflicting information concerning the storage of the recordings. Sharp reportedly is unable to document how the videos were stored, or the manner in which they were sent to security employees to review during the investigation.

35.    Some of the computers holding the secret recordings were moved to an area where they could be accessed by multiple information technology employees.

- 7 -

36.     One of the computers in the operating rooms was "refreshed," or replaced by Sharp, during the time the cameras were operating.

37.     Sharp claims that it deleted recordings between July 2012 and February 2013 that were captured by the hidden cameras, but Sharp's IT employees reportedly cannot remember deleting anything.

**F.     Sharp publicly disclosed its gross invasion of privacy *for the first time* on or about April 5, 2019.**

38.     On April 5, 2019, the President and Chief Executive Officer of Sharp Healthcare issued a written statement, which provided in part:

> You may have seen increased media attention surrounding an investigation into missing drugs that took place at Sharp Grossmont Hospital between July 2012 and June 2013.
>
> *          *          *
>
> Our initial efforts to determine the cause of the missing drugs through interviews and other investigative methods were unsuccessful. We then installed a computer monitor with a motion-activated camera in each of the three Women's Health Center operating rooms. Although the cameras were intended to record only individuals in front of the anesthesia carts, others, including patients and medical personnel in the operating rooms, were at times visible to the cameras and recorded without sound.
>
> *          *          *
>
> We sincerely apologize that our efforts may have caused any distress to the women who were recorded, their families, and others we serve.[10]

**G.     The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment.**

39.     Sharp Grossmont and its agents concealed the existence of Plaintiff's claims and the fact that Plaintiff had a cause of action against them for secretly

---

[10] Letter from Chris Howard, President and Chief Executive Officer, Sharp Healthcare, available at https://www.documentcloud.org/documents/5796173-Community-Letter.html (last accessed April 10, 2019).

- 8 -

recording them at their most vulnerable by making material representation(s) to Plaintiff involving a past or existing fact, including by misrepresenting that their acts and/or conduct were for the purpose of medical care.

40.    The material representation(s) to Plaintiff and the Class were false in that Defendants were actually recording their surgeries for their own internal interests that in no way furthered the medical care of Plaintiff.

41.    When Sharp Grossmont and its agents made the material representation(s), they knew that they were false in that they knew that the recordings were not proper, appropriate, legitimate, and/or considered within the standard of care by any physician of any specialty and/or surgery or anesthesiology.

42.    Sharp Grossmont and its agents made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff and the Class in that Plaintiff and the Class members should believe that the actions of Sharp Grossmont while they were sedated were in furtherance of their medical care; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Defendants.

43.    Plaintiff and Class members acted in reliance upon the material representation(s) in that they:

        a.    Reasonably believed that the actions taken by Sharp Grossmont were in furtherance of their medical care;

        b.    Did not believe that they should question and/or report any conduct to appropriate authorities; and

        c.    Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendants.

44.    Defendants further concealed the fraud by affirmative act(s) that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of this fraud in that they:

a.   Misrepresented to other medical professionals in the examination room as to the existence of the hidden cameras; and

b.   Did not abide by or follow the standard of care concerning the filming of patients without consent.

45.   The actions and inactions of Defendants constituted fraudulent concealment.

46.   The statute of limitations for each of Plaintiff's and the Class's causes of actions was equitably tolled, and Defendants are equitably estopped from asserting the statute of limitations as a defense, by reason of their wrongful conduct.

47.   Defendants engaged in, joined in, and conspired with each of the other Defendants and wrongdoers in carrying out the tortuous and unlawful activities herein described. Each Defendant is legally responsible for the occurrences herein alleged, and Plaintiff's and the Class's damages, as herein alleged, were proximately caused by all Defendants.

48.   Plaintiffs and Class members did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Defendants until Defendants issued an acknowledgement of the invasion of privacy and an apology on or about April 5, 2019.

## V.   CLASS ALLEGATIONS

49.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4) on behalf of herself and the following Class:

> All women who underwent a surgical procedure in the Women's Health Center at Sharp Grossmont Hospital between July 17, 2012 and June 30, 2013.

50.   The Class consists of more than 1,800, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by Sharp Grossmont.

51.    The claims of Plaintiff are typical of the Class. The claims of the Plaintiff and the Class are based on the same legal theories and arise from the same unlawful invasion of privacy.

52.    There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect only individual Class members within the meaning of Fed. R. Civ. P. 23(a)(2) and (b)(3). Class treatment of common issues under Fed. R. Civ. P. 23(c)(4) will materially advance the litigation.

53.    Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

    a.    Whether Defendants invaded the privacy of Plaintiff and the Class;

    b.    Whether Defendants were grossly negligent by recording Plaintiff and the Class in the operating room without their consent;

    c.    Whether Defendants negligently failed to warn or educate Plaintiff and the Class about the risks of being recorded while undergoing surgery;

    d.    Whether Defendants negligently failed to warn, educate or train their own employees about the confidentiality concerns and privacy rights of patients undergoing surgery in their facilities;

    e.    Whether Defendants intentionally or negligently inflicted emotional distress on Plaintiff and the Class; and

    f.    Whether Plaintiff and the Class are entitled to damages.

54.    Absent a class action, most of the members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to Defendants' legal responsibility, in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

- 11 -

55.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other respective Class members, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the other members of the Class.

## VI.   CAUSES OF ACTION
### COUNT I
### INVASION OF PRIVACY

56.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

57.     Defendants secretly filmed Plaintiff and the Class while they were unconscious or sedated undergoing medical procedures—without consent, and without protecting their privacy.

58.     Plaintiff and the Class had a reasonable expectation of privacy in the operating rooms of Sharp Grossmont Hospital's Women's Health Center.

59.     Doctors must obtain informed consent in order to provide medical treatment. "Consent is based on the disclosure of information and a sharing of interpretations of its meaning by a medical professional. The accuracy of disclosure, insofar as it is possible, is governed by the ethical requirement of truth-telling."[11]

60.     Defendants filmed patients' genitalia and their medical procedures without their consent or any disclosure. Defendants' conduct was outrageous and motivated by a commercial interest in disregard of Plaintiff's and the Class's privacy rights.

---

[11] American College of Obstetricians and Gynecologists, Committee Opinion No. 439 (2009), https://www.acog.org/Clinical-Guidance-and-Publications/Committee-Opinions/Committee-on-Ethics/Informed-Consent.

010820-11/1115898 V2

61.     Defendants' intrusion into Plaintiff's and the Class's privacy would be highly offensive to a reasonable person.

62.     Defendants did not protect the privacy of patients they filmed. Defendants intentionally intruded upon Plaintiff's and the Class members' solitude, seclusion or private affairs and concerns by filming their gynecological and/or other surgeries, treatment and/or care without authorization or consent. This intrusion is highly offensive to reasonable individuals, such as Plaintiff and the Class members, and was totally unwarranted and unjustified, constituting invasion of privacy, and a violation of the Health Insurance Portability and Accountability Act of 2016, Pub. L. 104–191, 110 Stat. 1936 (HIPAA).

63.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff and Class members were damaged.

## COUNT II

## INVASION OF PRIVACY – CAL. CONST., ART. 1, § 1

64.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

65.     Defendants secretly filmed Plaintiff and the Class while they were unconscious or sedated undergoing medical procedures—without consent, and without protecting their privacy.

66.     Plaintiff and the Class had a reasonable expectation of privacy in the operating rooms of Sharp Grossmont Hospital's Women's Health Center.

67.     Defendants filmed patients' genitalia and their medical procedures without their consent or any disclosure. Defendants' conduct was outrageous and motivated by a commercial interest in disregard of Plaintiff's and the Class's privacy rights.

68.     Defendants' intrusion into Plaintiff's and the Class's privacy would be highly offensive to a reasonable person.

- 13 -

69.     Defendants did not protect the privacy of patients they filmed. Defendants intentionally intruded upon Plaintiff's and the Class members' solitude, seclusion or private affairs and concerns by filming their gynecological and/or other surgeries, treatment and/or care without authorization or consent. This intrusion is highly offensive to reasonable individuals, such as Plaintiff and the Class members, and was totally unwarranted and unjustified, violating their privacy rights under Article 1, Section 1 of the California Constitution.

70.     As a direct and proximate result of the Defendants' actions and/or inactions, Plaintiff's and members of the Class were damaged.

**COUNT III**

**VIOLATION OF CALIFORNIA PENAL CODE §§ 632 AND 637.2**

71.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

72.     Defendants intentionally video recorded and/or eavesdropped on Plaintiff's and the Class's confidential communications and medical procedures in the operating rooms of Sharp Grossmont Hospital's Women's Health Center by using an electronic device (hidden video cameras).

73.     Plaintiff and the Class had a reasonable expectation that their medical procedures were not being video recorded.

74.     Plaintiff and the Class had a reasonable expectation that their communications with medical personnel and their medical procedures were not being viewed by Sharp security personnel or by anyone not medically necessary for their care.

75.     As reflected above, Defendant unlawfully recorded confidential information of Plaintiff and the Class and violated their privacy rights in violation of California Penal Code §§ 632 and 637.2.

76.     Defendants did not have the consent of all parties to said conversations and communications to record them.

- 14 -

010820-11/1115898 V2

77.    Plaintiff and the Class suffered harm, and are entitled to treble damages for such harm. Defendants' conduct was a substantial factor in causing their harm. As a result, and in addition to other available remedies at law, pursuant to Penal Code § 637.2, Plaintiff and the Class is entitled to recover a sum equal to the greater of treble their actual damages or statutory penalties per violation.

## COUNT IV
## GROSS NEGLIGENCE

78.    Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

79.    The Defendants owed Plaintiff and the Class members a duty to use due care to ensure their freedom from manipulation, abuse, and invasion of privacy while undergoing surgery.

80.    By seeking medical treatment at Sharp Grossmont, a special, confidential, and fiduciary relationship between Plaintiff and Defendants and the Class members and Defendants was created, resulting in Defendants owing Plaintiff and the Class a duty to use due care.

81.    The Defendants' installation of hidden cameras that recorded their utterly-private medical procedures without disclosure or consent was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and the Class.

82.    The Defendants' conduct demonstrated a willful disregard for precautions to protect the protected health information, confidentiality, and privacy interests of Plaintiff and the Class.

83.    The Defendants' conduct as described above demonstrated a willful disregard for substantial risks to Plaintiff and Class members.

84.    The Defendants breached duties owed to Plaintiff and Class members and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs and

- 15 -

Class members' health, privacy, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

85.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff and Class members were damaged.

**COUNT V**

**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**

86.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

87.     The Defendants owed Plaintiff and the Class members a duty to take reasonable protective measures to protect them and other patients from the risk of disclosure of protected health information, compromising photographs and videos, and invasion of privacy by properly warning, training, or educating Plaintiff and the Class members and others about how to avoid such a risk.

88.     The Defendants breached their duty to take reasonable protective measures to protect Plaintiff, Class members, and other patients from the risk of disclosure of protected health information, compromising photographs and videos, and invasion of privacy, such as the failure to properly warn, train or educate Plaintiff, the Class members, and other patients about how to avoid such a particular.

89.     The Defendants breached their duty to take reasonable protective measures to protect Plaintiff, Class members, and other patients from the risk of disclosure of protected health information, compromising photographs and videos, and invasion of privacy, by failing to supervise and stop their employees from recording their medical procedures, and failed to properly handle those recordings after they were completed.

90.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff and Class members were damaged.

**COUNT VI**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

91.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

92.     Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff and the Class members.

93.     Defendants' outrageous conduct was not the type of ordinary physician examination or even rude or obnoxious behavior that women should be expected to tolerate. Rather, Defendants' conduct exceeded all possible bounds of decency.

94.     Defendants acted with intent or recklessness knowing that their female patients were likely to endure emotional distress given the relationship and trust placed in them by patients.

95.     Defendants' conduct caused suffering for Plaintiffs and the Class members at levels that no reasonable person should have to endure.

**COUNT VII**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

96.     Plaintiff and the Class restate and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

97.     Defendants' conduct negligently caused emotional distress to Plaintiff and the Class members.

98.     Defendants could reasonably foresee that their actions would have caused emotional distress to Plaintiff and the Class members.

99.     Plaintiff and the Class members were in a specific zone of danger undergoing surgery in the operating rooms at the Women's Health Center at Sharp Grossmont Hospital.

100.   Plaintiff and the Class members have suffered and will continue to suffer distress and emotional harm.

- 17 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members, pray that this Court:

A.      Certify the Class, name Plaintiff as representative of the Class, and appoint her lawyers as Class Counsel;

B.      Enter judgment against Sharp HealthCare in favor of Plaintiff and the Class;

C.      Enter judgment against Sharp Grossmont Hospital in favor of Plaintiff and the Class;

D.      Award Plaintiff and the Class members damages for pain and suffering, and compensatory and punitive damages; and

E.      Award Plaintiff her reasonable attorneys' fees and costs.

010820-11/1115898 V2

| | |
|---|---|
| 1 | Dated:  April 17, 2019 |

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/Kevin K. Green*
      Kevin K. Green
Kevin K. Green (CA No. 180919)
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
Tel: (619) 929-3340
Fax: (206) 623-0594
keving@hbsslaw.com

Steve W. Berman (*pro hac vice* pending)
Shelby R. Smith (*pro hac vice* pending)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
shelby@hbsslaw.com

Elizabeth A. Fegan (*pro hac vice* pending)
Whitney K. Siehl (*pro hac vice* pending)
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
beth@hbsslaw.com
whitneys@hbsslaw.com

010820-11/1115898 V2

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Amber Snodgrass, individually and on behalf of others similarly situated, | Sharp Healthcare, and Sharp Grossmont Hospital |

| (b)  County of Residence of First Listed Plaintiff  San Diego | County of Residence of First Listed Defendant  San Diego |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Hagens Berman Sobol Shapiro LLP<br>533 F. Street, Suite 207, San Diego, CA 92101 | '19CV0702 L    LL |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☒ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | | |

*(LABOR column)*
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation - Transfer
☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act of 2005

Brief description of cause:
Sharp Grossmont failed to protect privacy of patients by hidden cameras to film women during private procedures

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/17/2019 | /s/Kevin K. Green |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.